**SIGNED this 23 day of March, 2016.**



*Austin E Carter*

**Austin E. Carter**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 14-51473-AEC |
| | ) | |
| Stephen Earl Mitchell, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| Walter W. Kelley, Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 14-5059-AEC |
| | ) | |
| Nancy McCormack, | ) | |
| | ) | |
| Defendant. | ) | |

<u>Before</u>

Austin E. Carter

United States Bankruptcy Judge

Counsel:

For Defendant:                                Howard Peter Slomka
                                              The Slomka Law Firm, P.C.
                                              1069 Spring Street, NW
                                              2nd Floor
                                              Atlanta, Georgia 30309

For Trustee:                                  Thomas D. Lovett
                                              Kelley, Lovett, & Blakey, P.C.
                                              P.O. Box 1164
                                              2912-B North Oak Street
                                              Valdosta, Georgia 31603

## M E M O R A N D U M   O P I N I O N

Before the Court are the Defendant's and the Trustee's cross-motions for summary judgment under Federal Rule of Civil Procedure ("Rule") 56, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7056. This adversary proceeding was filed by the Trustee—Walter W. Kelley, as trustee of Stephen Earl Mitchell's Chapter 7 bankruptcy case—seeking to avoid, under §§ 544, 547, and/or 548 of the Bankruptcy Code, an alleged prepetition transfer of property by the Debtor to the Defendant.[1]

Proceedings to avoid and recover preferences and fraudulent conveyances are core proceedings under 28 U.S.C. § 157(b)(2)(F) and (H), respectively. Pursuant to Rule 56(a), the Court states on the record its reasons for its rulings on the parties' motions.

### S U M M A R Y   O F   T H E   R E C O R D

The underlying facts, as they appear from the record of this case, are as follows.[2]

In 2010, the Defendant bought some land and established her residence in a mobile home thereon (the "Property"). Shortly thereafter, the Debtor moved into the mobile home with the Defendant; it appears that he still lived there at the time that he commenced his Chapter 7 case.[3]

The Defendant contends that in early 2013, the Debtor and the Defendant entered into an agreement, whereby the Defendant was to transfer a one-half interest in the Property in exchange

---

[1]    Unless otherwise indicated, all references herein to "section" or "§" refer to a corresponding section of the Bankruptcy Code, and all references to the "Bankruptcy Code" relate to the corresponding sections of Title 11 of the U.S. Code.

[2]    The record in this case consists of: (i) the parties' pleadings; (ii) the parties' respective statements of uncontested facts (to the extent they are not controverted by the other party); (iii) the documents attached to the parties' respective motions—the Agreement, the First Deed, the Modification Agreement, the Second Deed, and the Defendant's Affidavit (as these are defined hereinafter); and (iv) the records addressed by the Court's Consent Order Granting Defendant's Motion to take Judicial Notice, *Kelley v. McCormack (In re Mitchell)*, Ch. 7 Case No. 14-51473, Adv. No. 14-5059 (Bankr. M.D. Ga. Mar. 25, 2015), ECF No. 29.

[3]    The parties do not agree whether the Defendant is an insider of the Debtor. The dispute centers on the nature of the parties' relationship, which has an admitted aspect of past romantic involvement. However, for the purposes of these motions, the Defendant stipulates that she is an insider, which eliminates the need for the Court to decide whether the one-year preference "reach-back" period of § 547(b)(4)(B) applies. *See* Defendant's Motion for Summary Judgment at 6, *McCormack*, Adv. No. 14-5059 (Aug. 28, 2015), ECF No. 45 [hereinafter Defendant's Motion]; Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment, *McCormack*, Adv. No. 14-5059 (Sept. 29, 2015), ECF No. 51 (incorporating Defendant's Motion as response to Trustee's Cross-Motion, *infra* note 5).

for the Defendant's execution of certain repairs and upgrades as to the Property, particularly the mobile home. The agreement—as reproduced in Exhibit 2 to the Defendant's Motion—consists of two pages.[4] The first page contains an itemized list of tasks, which together constitute a substantial makeover of the mobile home and miscellaneous work to the land and outbuildings. The second page states: "In exchange for the work and completion of the items listed on Page 1, I [the Defendant] will add your [Debtor's] name to the deed. It is understood that if the work is not completed by January 1, 2014, your [Debtor's] name will be removed from the deed." The second page, showing the signatures of the parties, is dated May 14, 2013. (Such agreement, hereinafter, the "Agreement.")

In June 2013, the Defendant executed a quitclaim deed conveying the Property to herself and the Debtor as joint tenants in common with rights of survivorship.[5] The deed is dated June 12, 2013[6] and was recorded on June 27, 2013 (such deed, the "First Deed").

---

[4]    The Defendant asserts, and the Trustee has not disputed, that the agreement attached as Exhibit 2 to the Defendant's Motion is a reproduction of the same agreement between the Defendant and the Debtor to which the Defendant refers in her Affidavit executed July 28, 2015 (Exhibit 1 of the Defendant's Motion) (hereinafter, Defendant's "Affidavit"). The operative language of the agreement reproduced in Exhibit 2 is consistent with the agreement referenced in the Defendant's Affidavit and Motion. *Compare* Defendant's Motion, *supra* note 3, at 4 (setting forth agreement in reference to both Affidavit and Exhibit 2), *with id.* at 24 (Ex. 1 ¶ 6) (consistent quoted language in Affidavit), *and id.* at 29 (Ex. 2). However, confusion remains. The Defendant's Affidavit is internally conflicting as to when the agreement was signed, and as to other important dates. *Id.* at 23-25 (Ex. 1 ¶ 6) (agreement signed May 21, 2014), (Ex. 1 ¶ 7) (First Deed executed pursuant to agreement in June 2013), (Ex. 1 ¶¶ 7-9) (Debtor to be able to perform repair work between May 2013 and January 2014 because parties assumed Debtor would begin employment summer of 2010), (Ex. 1 ¶ 12) (agreement executed May 14, 2014).

[5]    A reproduction of this deed is attached to the Trustee's Motion. *See* Trustee's Response to McCormack's Summary Judgment Motion [Docket 45] and Trustee's Cross-Motion for Summary Judgment at 8-10, *McCormack*, Adv. No. 14-5059 (Sept. 2, 2015), ECF No. 46 [hereinafter Trustee's Cross-Motion].

The Defendant noted at the hearing that this deed is irregular in that the printed form conveys the whole property from the Defendant to the Defendant and the Debtor as joint tenants with rights of survivorship and yet later states that the Defendant will not "at anytime[] claim or demand any right, title or interest to the aforesaid . . . premises." *Id.* at 8-9. Nevertheless, the parties agree that the deed represents a conveyance of some fee simple interest in one-half of the Property, whether in fee simple absolute (as argued by the Trustee), or in fee simple subject to a condition subsequent (as argued by the Defendant).

[6]    Also apparently executed on this day was a "Modification Agreement" entered into by the Defendant and the Debtor with the holder of a deed to secure debt on the Property, adding the Debtor as a grantor of that instrument. *See* Trustee's Cross-Motion, *supra* note 5, at 11-13.

On January 23, 2014, a judgment creditor of the Debtor seized approximately $110,000 in two bank accounts bearing his name and that of a third party.[7]  Also on January 23, 2014, the Debtor, who had not made the repairs as outlined in the Agreement, executed a quitclaim deed in favor of the Defendant as to the Property (the "Second Deed").[8]  The Second Deed was recorded on January 24, 2014.

The Debtor filed his Chapter 7 bankruptcy case on June 30, 2014.  The Trustee thereafter filed the Complaint in this adversary proceeding, alleging that the delivery and recordation of the Second Deed constituted a transfer from the Debtor of a one-half interest in the Property, and that this transfer is avoidable under §§ 544, 547, and/or 548, and recoverable from the Defendant as transferee pursuant to § 550.

The Defendant has filed her present Motion requesting that the Court grant summary judgment against the Trustee as to his claims, on the basis that the Debtor did not transfer an interest in property, which is an essential element to the Trustee's avoidance action.  In the alternative, the Defendant requests partial summary judgment that the Debtor is entitled to an exemption under § 522(g) as to any transfer avoided by the Trustee, and (again in the alternative) that the Court grant summary judgment as to two affirmative defenses to the Trustee's § 547 preference action—new value under § 547(c)(4) and transfer in the ordinary course under § 547(c)(2).  In response, the Trustee moves for summary judgment as to several discrete issues: (i) that the delivery and recordation of the Second Deed constituted a "transfer of an interest of the debtor in property" as that phrase is employed in § 547(b); (ii) that the Debtor's transfer was voluntary and, accordingly, that the Debtor is not entitled to claim an exemption as to any property recovered by the Trustee in this action; and (iii) that the Defendant's two asserted defenses—new value and ordinary course—fail as a matter of law.  At the Defendant's request, the Court held a hearing on these motions.

---

[7]    Approximately one year later, the presiding court dissolved this garnishment and granted the third party unrestricted access to the funds, having found that the Debtor's name was on the accounts merely as a convenience to the third party.

[8]    A reproduction of this deed is attached to the Defendant's Motion, *supra* note 3, at 32-34.

**A P P L I C A T I O N   O F   L A W**

**I.    Summary Judgment Standard.**

Pursuant to Rule 56, a party moving for summary judgment is entitled to prevail (as to whatever claims or defenses, or parts of claims or defenses, on which the movant seeks judgment) if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law as to such claims, defenses, or parts thereof. Fed. R. Civ. P. 56(a). The movant bears the initial burden to show from the record the absence of a genuine dispute as to material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) ("The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."). The movant can show the absence of genuine dispute as to a claim or defense (or part thereof) by demonstrating that either: (i) the nonmovant cannot, from the record, meet a burden imposed on him by applicable law to prove facts establishing such claim, defense, or part thereof, *Celotex Corp.*, 477 U.S. at 323; or (ii) the record establishes facts with a level of certainty that the trier of fact (employing the evidentiary standard that would be applicable at trial) could not return a verdict in favor of the nonmovant as to that matter, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). *See also Clark*, 929 F.2d at 608. Once the moving party has met his burden, the burden shifts to the nonmovant to point to specific parts of the record that demonstrate a genuine dispute as to facts material to the claim, defense, or part thereof, at issue. *Dawkins v. Fulton Cty. Gov't*, 733 F.3d 1084, 1089 (11th Cir. 2013). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby, Inc.*, 477 U.S. at 255. Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are to be reserved for trial. *Id.*

Although the court is required to consider any part of the record cited by the parties, it *may* consider any part of the record. Fed. R. Civ. P. 56(c)(3). The court may not, however,

6

consider "statements of facts presented in motions, memoranda of law, or other papers." *Meyers v. Town of Putney (In re Corp. of Windham Coll.)*, 34 B.R. 408, 410 (Bankr. D. Vt. 1983).

Affidavits submitted in support of or opposition to "a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Rule 56(c)(2) provides that a party may object to any material cited by an opposing party that cannot be reduced to admissible evidence. Fed. R. Civ. P. 56(c)(2). Inadmissible documents or defective affidavits attached to an opposing party's motion, if not timely objected to, may be considered as part of the record unless doing so would constitute a gross miscarriage of justice. *McDaniel v. Waits (In re Nat'l Buy-Rite, Inc.)*, 7 B.R. 407, 409 (Bankr. N.D. Ga. 1982) (citing 10B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 2738 (3d ed.)); *see also Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (collecting cases).

"A trial court is permitted, in its discretion, to deny even a well-supported motion for summary judgment, if it believes the case would benefit from a full hearing." *United States v. Certain Real & Pers. Prop. Belonging to Hayes*, 943 F.2d 1292, 1297 (11th Cir. 1991); *see also Liberty Lobby, Inc.*, 477 U.S. at 255. However, it is generally in the interests of justice and judicial economy for the Court to grant summary judgment where Rule 56 has been satisfied. *See Celotex Corp.*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 1 (stating that rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

## II.    Issues Raised for Summary Judgment.

### A.    *Transfer of an Interest of the Debtor in Property*

The Defendant's primary argument challenges the "threshold requirement" of avoidance actions under §§ 547(b) or 548(a)—the transfer of an interest of the debtor in property.[9] [11]

---

[9]    The Trustee's Complaint states generally that this action is brought under § 544 as well as §§ 547 and 548, although no independent § 544 claim is set forth. *See* Complaint to Avoid Transfer(s) ¶ 1, *McCormack*, Adv. No. 14-5059 (Sept. 3, 2014), ECF No. 1 [hereinafter Complaint]. Further, the Trustee's summary judgment brief fails to address any independent claim he might have under § 544. *See, e.g.*, Trustee's Cross-Motion, *supra* note 5, at 2-3. Perhaps the Trustee intends to utilize § 544 only as part of his §§ 547 and 548 claims, as discussed later in this

U.S.C. § 547(b) ("[T]he trustee may avoid any transfer of an interest of the debtor in property . . . ."), § 548(a) ("The trustee may avoid any transfer . . . of an interest of the debtor in property . . . ."); *see also Begier v. I.R.S.*, 496 U.S. 53, 58 (1990) ("The reach of § 547(b)'s avoidance power is . . . limited to transfers of 'property of the debtor.'"); *Bank of Am., N.A. v. Mukamai (In re Egidi)*, 571 F.3d 1156, 1160 (11th Cir. 2009) (referring to transfer of debtor property as "threshold requirement" to § 547 preference action); *Wallace v. McFarland (In re McFarland)*, 619 F. App'x 962, 967 (11th Cir. 2015) (referring to transfer of "interest of the debtor in property" as "threshold" issue to § 548(a)(1) action). At trial, the Trustee would have the burden to show that a transfer of an interest of the Debtor in property occurred. *See* 11 U.S.C. § 547(g); *Menotte v. Leonard (In re Leonard)*, 418 B.R. 477, 482 (Bankr. S.D. Fla. 2009).

The Defendant's primary argument is that the interest in the Property conveyed to the Debtor in 2013 was in fee simple subject to a condition subsequent. The Defendant argues that the First Deed implicitly incorporates the Agreement, as a contemporaneously executed document, conveying—not a fee simple absolute as it would appear from the face of the First Deed—but rather a fee simple subject to a condition subsequent (otherwise termed, a fee simple subject to a power of termination). If this were true, the present interest in the fee estate vested in the Defendant on or after January 1, 2014, the date by which the Debtor was required to perform the repairs else his "name [would] be removed from the deed." Under this argument, it was in recognition of the Debtor's already-terminated estate and consequent to the Agreement's provision that his "name [would] be removed from the deed," that the Debtor executed and delivered the Second Deed.[10]

---

Section. Similarly, although the Defendant by her Motion requests the dismissal of the entire adversary proceeding, she does not address any independent claim of the Trustee under § 544. *See, e.g.*, Defendant's Motion, *supra* note 3, at 6. Because the Court denies the Defendant's Motion on other grounds, the Court need not determine whether it could otherwise grant the Defendant's Motion for the dismissal of the whole action, including the Trustee's claim under § 544, if any.

[10]   The Defendant seems to have anticipated an objection by the Trustee based on the doctrine of merger. It appears that the Defendant was concerned that the Court would not consider the Agreement in relation to the Debtor's later-delivered Second Deed, which the Trustee identifies as constituting the transfer. However, as the Defendant explains, the obligations imposed on the Debtor by the Agreement did not merge into the First Deed because the Agreement makes clear that the obligations were to be performed after the First Deed's execution. The cases cited by the Defendant establish that under Georgia law, where an agreement for the sale of land contains

    (1)    <u>Reasons for denying the Trustee's Motion for summary judgment that the
Defendant received the transfer of an interest of the Debtor in property by
the Second Deed.</u>

        (a)    *Trustee's rights under § 544 not "interest of the debtor in
property."*

The Trustee's first argument is that, regardless of the nature of the conveyance

effectuated by the First Deed and the Agreement, he prevails because, prior to the recordation of

the Second Deed, the land records reflected a one-half interest by the Debtor in the Property in

fee simple absolute.  He reasons that if the Second Deed had not been executed, he could—

pursuant to § 544(a)(3)[11]—have stripped off the unrecorded Agreement and any limitation it

might have created as to the Debtor's interest, bringing a one-half interest in the Property into the

Debtor's estate in fee simple absolute.

The Trustee's argument is first premised on *Begier v. Internal Revenue Service*, a seminal

Supreme Court case defining (in the context of trusts) "interest of the debtor in property," as that

phrase is employed in the avoidance provisions of the Bankruptcy Code. 496 U.S. 53.  The

Trustee notes that *Begier* defines "property of the debtor" as "property that would have been part

of the estate had it not been transferred before the commencement of bankruptcy proceedings."

*See id.* at 58.  Arguing that the recordation of the Second Deed diminished the Debtor's

bankruptcy estate by depriving the Trustee of the right to recover a one-half interest in the

Property under § 544(a)(3) (via § 550), the Trustee reasons that the Second Deed must mark a

---

covenants that are clearly intended to occur after the execution of a deed contemplated thereby, such contractual
obligations do not merge into that deed. *See, e.g.*, *Holmes v. Worthey*, 159 Ga. App. 262, 267, 282 S.E.2d 919, 923
(1981), *aff'd*, 249 Ga. 104, 287 S.E.2d 9 (1982).

[11]    Section 544(a)(3) provides that:

> The trustee shall have, as of the commencement of the case, and without regard
> to any knowledge of the trustee or of any creditor, the rights and powers of, or
> may avoid any transfer of property of the debtor or any obligation incurred by the
> debtor that is voidable by . . . a bona fide purchaser of real property, other than
> fixtures, from the debtor, against whom applicable law permits such transfer to be
> perfected, that obtains the status of a bona fide purchaser and has perfected such
> transfer at the time of the commencement of the case, whether or not such a
> purchaser exists.

11 U.S.C. § 544(a).

transfer of an interest of the Debtor in property.  The Trustee supports this interpretation of

*Begier* by a bare citation to a line of cases discussing the diminishment of the estate concept

often discussed in avoidance actions.  The Trustee also argues that the consideration of

§ 544(a)(3) is mandated by § 547(b)(5), as recognized by *Collier on Bankruptcy*.  The Courts

addresses each of these arguments in turn.

In *Begier*, the debtor (an airline) made several large prepetition payments to the Internal

Revenue Service (the "IRS") for certain withholding taxes and excise taxes that it had previously

failed to timely remit. 496 U.S. at 56.  The Supreme Court was called on to determine whether

the tax payments, particularly those paid out of the debtor-airline's general operating account,

were transfers of property of the debtor that could be avoided under § 547. *Id.* at 55-57.  The

Court stated:

> The Bankruptcy Code does not define "property of the debtor."
> Because the purpose of the avoidance provision is to preserve the
> property includable within the bankruptcy estate—the property
> available for distribution to creditors—"property of the debtor"
> subject to the preferential transfer provision is best understood as
> that property that would have been part of the estate had it not been
> transferred before the commencement of bankruptcy proceedings.
> For guidance, then, we must turn to § 541, which delineates the
> scope of "property of the estate" and serves as the postpetition
> analog to § 547(b)'s "property of the debtor."
>
> Section 541(a)(1) provides that the "property of the estate"
> includes "all legal or equitable interests of the debtor in property as
> of the commencement of the case."  Section 541(d) provides:
>
>> "Property in which the debtor holds, as of the
>> commencement of the case, only legal title and not
>> an equitable interest . . . becomes property of the
>> estate under subsection (a) of this section only to the
>> extent of the debtor's legal title to such property, but
>> not to the extent of any equitable interest in such
>> property that the debtor does not hold."
>
> Because the debtor does not own an equitable interest in
> property he holds in trust for another, that interest is not "property
> of the estate."  Nor is such an equitable interest "property of the
> debtor" for purposes of § 547(b).  As the parties agree, then, the
> issue in this case is whether the money [the debtor-airline]

10

> transferred from its general operating accounts to the IRS was
> property that [the debtor-airline] had held in trust for the IRS.

*Id*. at 58-59.  The Court determined that such tax payments were, pursuant to federal statute,

traceable trust funds. *Id.* at 67.  Thus, when the debtor-airline's funds were used to pay the taxes,

though legal title rested in the debtor-airline, the beneficial (or equitable) interest rested in the

United States. *Id.* at 60-67.  Accordingly, the Court held that the debtor-airline's transfer of the

funds to the IRS was not a transfer a property of the debtor-airline and accordingly could not be

recovered by the Chapter 11 trustee. *Id.* at 67.

The Trustee's argument is based on the premise that *Begier*'s definition of "interest of the

debtor in property"—as "property that would have been part of the estate had it not been

transferred before the commencement of bankruptcy proceedings"—includes property that the

Trustee could have recovered for the Debtor's bankruptcy estate under § 544 had the Debtor

filed his bankruptcy petition prior to the recordation of the Second Deed.  The Trustee has

offered no case recognizing a trustee's theoretical, prepetition § 544 rights as "property of the

debtor" in a §§ 547 or 548 action, however, and the Court considers his premise an over-inflation

of the Supreme Court's analogy between § 541 and the avoidance provisions.

The Trustee's argument misses a vital distinction inherent in the analogy between the

scope of property included in § 541 and the property interests reachable by a trustee under the

avoidance provisions—§ 541 is a *postpetition* analog.[12]  As will be shown more fully below, in

determining whether a transaction constituted a transfer of the interest of the debtor in property,

the Court must first determine whether the debtor parted with *prepetition* state law rights (except

as altered by applicable federal law or a countervailing federal interest), not whether the trustee

---

[12]    The *Begier* Court's use of the term *analog* implies that such distinctions may exist. *Webster's Third New International Dictionary*, 76-77 (Philip Babcock Gove, ed., 1971) (third definition of *analogy*: "resemblance in some particulars between things otherwise unlike").  *Analog* is defined as *analogue*, which incorporates in its definition *analogous*, which, in turn, incorporates the definition of *analogy*. *Id.* (redirecting *analog* to *analogue*), (first definition of *analogue*: "anything that is analogous or similar to something else"), (first definition of *analogous*: "showing an analogy or a likeness permitting one to draw an analogy [or] susceptible of comparison either in general or in some specific detail").

11

was thereby prevented from recovering property pursuant to his rights under § 544(a)(3), which arise when a debtor files his petition.[13]

It is axiomatic that the "interests of the debtor in property" referenced in § 541(a)(1) are defined by state law at time of the commencement of the case unless altered by applicable federal law or a countervailing federal interest. *Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law.  Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."); *Raborn v. Menotte (In re Raborn)*, 470 F.3d 1319, 1323 (11th. Cir. 2006) (under § 541(a)(1), trustee adheres to rights held by debtor at commencement of case); *Witko v. Menotte (In re Witko)*, 374 F.3d 1040, 1042 (11th Cir. 2004) (same).  Because the estate's § 541(a)(1) property interests are a mere reflection of a debtor's rights prepetition, it is no surprise that the *Begier* Court looks to those rights delineated by § 541(a)(1) (as those rights are further limited and/or clarified by § 541(d)) in defining property of the debtor in the avoidance provisions.[14]  Indeed, the Court in *Begier* supports its *property-of-the-estate – property-of-the-debtor* analogy by relying on the textual intersection between (a)(1) of § 541—referring to "all legal or equitable *interests of the debtor in property*"—and the avoidance statutes' references to "an *interest of the debtor in property*."[15]

---

[13]   Section 544(a) prescribes to a trustee certain rights of hypothetical creditors and other third-parties. 11 U.S.C. § 544(a).  These arise "as of the commencement of the case." *Id.*  A voluntary case is "commenced" when an eligible debtor files a petition with the bankruptcy court. *Id.* § 301(a).

[14]   *Begier* makes clear that § 541(d) should be considered in defining property of the debtor for the purpose of avoidance actions. 496 U.S. at 58.  It is appropriate to recognize that § 541(d) "simply restates and clarifies what is already the law under § 541(a)(1), namely, that property of the estate includes only those legal and equitable interests held by the debtor at the commencement of the case." *Hatoff v. Lemons & Assocs., Inc. (In re Lemons & Assocs., Inc.)*, 67 B.R. 198, 208-09 (Bankr. D. Nev. 1986).  This Court does not predict whether other provisions in § 541 *limiting* § 541(a)(1)—such as § 541(b)—should be considered in defining property of the debtor for the purpose of avoidance actions. *Cf. Manchester v. First Bank & Tr. Co. (In re Moses)*, 256 B.R. 641, 648 (B.A.P. 10th Cir. 2000) ("[T]he debtor's interest in the funds must be analyzed under § 541, including any limitations thereunder, as for example, those set forth in § 541(b) and (d), and the limitation on § 541(a)(1) related to traceable property that the debtor holds in trust for another.").  Rather, today the Court holds only that the Supreme Court in *Begier* did not intend for property potentially includable in the estate under § 541(a)(3) to be considered property of the debtor for avoidance actions under §§ 547(b) and 548(a). *See infra* note 15.

[15]   The Trustee's argument implies that interests of the debtor in property (for the purposes of §§ 547 and 548) should be expanded beyond § 541(a)(1) to include all interests includable in the estate by § 541(a)(3), which includes in the estate any interest in property that the trustee recovers from a transferee under § 550 in conjunction with a §§ 544, 547, or 548 avoidance action. *See* 11 U.S.C. §§ 541(a)(3), 550(a).  To include §§ 541(a)(3)/550(a)

*Begier*, 496 U.S. at 59 n.3 ("We . . . read both the older language ('property of the debtor') and the current language ('an interest of the debtor in property') as coextensive with 'interests of the debtor in property' as that term is used in 11 U.S.C. § 541(a)(1).").  In sum, *Begier* directs this Court to examine the debtor's rights that are incorporated into the debtor's bankruptcy estate under § 541(a)(1), and these rights are defined by state law unless altered by applicable federal law or a countervailing federal interest.[16]  This aligns with the well-established principle that in the Bankruptcy Code's avoidance provisions, "[i]n the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law." *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992); *see* 5 *Collier on Bankruptcy* ¶ 547.03[2] & n.23 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed.); *see also, e.g.*, *In re McFarland*, 619 F. App'x at 967; *Notinger v. Migliaccio (In re Fin. Res. Mortg., Inc.)*, 468 B.R. 487, 502 (Bankr. D.N.H. 2012).

Thus, in determining whether a transaction constituted a transfer of the interest of the debtor in property, the Court must find that the debtor disposed of or parted with rights that he had in property,[17] such rights being defined by state law unless altered by applicable federal law

---

interests in the definition of debtor property in §§ 547 and 548 would be hopelessly circular.  For example, if one defines debtor property in § 547 to include all potential §§ 541(a)(3)/550(a) interests, one would have to know the limits of the trustee's avoidance rights under § 547, which was the purpose of the initial inquiry.  The Court has not been able to formulate any workable system to solve this circularity by creating different definitions of debtor property among these statutes.  Even if such a workable system could be formulated, such a solution would fly in the face of basic principles of statutory interpretation.  "It is a basic canon of statutory construction that identical terms within an Act bear the same meaning." *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 680 (11th Cir. 1993); *see also, e.g.*, *Gustafson v. Alloyd Co.*, 513 U.S. 561, 568 (1995) (stating that a "term should be construed, if possible, to give it a consistent meaning throughout [a congressional act]").  *Compare* 11 U.S.C. § 544(a) ("property of the debtor"), *with* § 547(b) ("interest of the debtor in property"), *and* § 548(a) ("interest of the debtor in property").  And further, such a solution would be contrary to a weight of authority that treats these phrases as comprehending identical rights and interests. *See, e.g.*, *Burden v. Richardson (In re Richardson)*, No. 11–2042, 2013 WL 2370720, at *3 (Bankr. E.D. Ky. May 30, 2013) (treating definition of "interest of the debtor in property" as uniform between §§ 544, 547, and 548); *Wagner v. Wilson (In re Vaughan Co., Realtors)*, No. 12–01142, 2013 WL 960143, at *3 (Bankr. D.N.M. Mar. 11, 2013) (accord); *Notinger v. Migliaccio (In re Fin. Res. Mortg., Inc.)*, 468 B.R. 487, 501 (Bankr. D.N.H. 2012) (accord).

[16]   As noted above (*see supra* note 15), the Court believes that *Begier* is best understood as inquiring what would have been property of the estate immediately upon filing (§ 541(a)(1)), not what may perhaps be later included in the estate by an avoidance action (§ 541(a)(3)).  Although, in other contexts, some courts hold that property of the estate includes property that the trustee *could* recover back into the estate pursuant to his avoidance powers, this Court agrees with *Collier* and the courts that hold the contrary—property subject to an avoidance action is not property of the estate until actually recovered by the trustee. *See* 5 *Collier on Bankruptcy* ¶ 541.12[4] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed.) (citing cases).

[17]   "Transfer" is defined by federal law as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with . . . an interest in property." 11 U.S.C. § 101(54); *see also Barnhill*, 503

or a countervailing federal interest. *See Barnhill*, 503 U.S. at 398 (examining "the rights and duties enjoyed under state law by each party").

By asking the Court to rule based on § 544(a)(3) without relation to the property interests held by the Debtor under state property law, the Trustee is, in essence, asking the Court to *add* the Trustee's later-arising rights as a bona fide purchaser under § 544(a)(3) to the scope of "interests of the debtor in property." When viewed in light of the preceding discussion, two reasons why the Court cannot do this become clear from the face of § 544: first, § 544 gives the *trustee*, not the *debtor*, rights; and second, the trustee's rights do not exist until "*as of the commencement of the case*." 11 U.S.C. § 544(a).[18] Indeed, the Trustee, by his argument under § 544(a), seeks to employ a §§ 547 or 548 action to reach *beyond* lost rights of the debtor to also grasp lost rights of hypothetical creditors and other third-parties. To include these rights in the definition of "interest of the debtor in property" in §§ 547 and 548 goes against the plain language of these statutes, which refer only to interests *of the debtor*. Congress could have added the interests of hypothetical creditors and other third-parties (as described in § 544(a)) to these interests, but it did not do so.

---

U.S. at 397-98. However, for the purposes of § 548 and, in some contexts, § 547, a transfer of real property is not deemed to have been "made" until the loss of the debtor's interest in property is enforceable against a bona fide purchaser.

In § 548, this conclusion is dictated by § 548(d)(1), which states in relevant part:

> For the purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee . . . .

11 U.S.C. § 548(d)(1). This provision requires both a *transfer* ("disposing of or parting with . . . an interest in property") as well as *perfection* of that transfer, before a transfer is deemed to have been "made." *See id.*

Section 547 is more nuanced. Regardless of when the transfer takes effect between the parties or was perfected, no transfer is deemed "made" until the debtor acquired rights in the transferred property. *Id.* § 547(e)(3). Aside from this consideration, the time the transfer is "made" hinges on whether perfection occurred before the expiration of the thirty-day period following the date that the transfer took effect between the parties. A transfer perfected within that thirty-day period is "made" the date the transfer took effect between the parties. *Id.* § 547(e)(2). However, a transfer that is perfected after the thirty-day period is deemed as having been "made" upon the earlier of the date of perfection or the filing of the case. *Id.* Perfection as to real property occurs "when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee." *Id.* § 547(e)(1)(A).

[18]    *See also supra* note 13.

14

The Court's conclusion is related to the basic principle that a court must decide whether there has been a transfer of the debtor in property, not by considering what a creditor gains, but rather what the debtor has lost. *Keller v. Keller (In re Keller)*, 185 B.R. 796, 799 (B.A.P. 9th Cir. 1995) ("The focus should be not on what interest the transferee received, but rather on the interest, if any, of the debtor in the property."); *Moser v. Bank of Tyler (In re Loggins)*, 513 B.R. 682, 697 (Bankr. E.D. Tex. 2014) ("In short, the legal concern with preferences is not that one creditor of the debtor gets paid while others do not, but that the payment to that creditor is to the corresponding prejudice of other creditors." (quoting Charles Jordan Tabb, *The Law of Bankruptcy* § 6.11 at 360 (1997))).

This brings the Court to the Trustee's advocated use of § 547(b)(5). The Trustee wants to remove the Court's focus from whether the Debtor lost an interest in property under state law, and place it on whether the Defendant fared better in this case than she would have fared had not the Second Deed been recorded prior to the filing of the Debtor's Chapter 7 case. This later analysis may indeed, as argued by the Trustee, be the proper analysis under (b)(5) of § 547.[19] However, the Trustee errs in melding these two tests together. These analyses are separate and independent: the first analysis is used to determine whether there has been a transfer of an interest of the debtor in property in §§ 547 or § 548 avoidance actions,[20] while the second

---

[19]   11 U.S.C. § 547(b)(5) ("[T]he trustee may avoid any transfer of an interest of the debtor in property . . . that enables such creditor to receive more than such creditor would receive if—(A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title."); *see CEPA Consulting, Ltd. v. N.Y. Nat'l Bank, Inc. (In re Wedtech Corp.)*, 165 B.R. 140, 145 (Bankr. S.D.N.Y. 1994), *aff'd in part, rev'd in part*, 187 B.R. 105 (S.D.N.Y. 1995) ("The test of § 547(b)(5), however, is not whether the estate got less, but whether the transfer 'enables such creditor to receive more' in repayment of the antecedent debt."); *see also, e.g., Gouveia v. Cahillane (In re Cahillane)*, 408 B.R. 175, 210 (Bankr. N.D. Ind. 2009) ("As to the hypothetical liquidation test under § 547(b)(5), a court must determine whether a creditor received more (as result of alleged preferential transfers) than it would have received in a Chapter 7 distribution."); *Smith v. KKM P'ship (In re Quality Woodwork Interiors, Inc.)*, No. 06–3032 & No. 06–3033, 2007 WL 1662635, at *3 (Bankr. S.D. Tex. June 4, 2007) ("The test established under § 547(b)(5) is whether the transfer enabled the creditor to receive more than the creditor would have received in a chapter 7 bankruptcy case."); *Gertz v. Bancohio Nat'l Bank (In re Conn)*, 9 B.R. 431, 434 (Bankr. N.D. Ohio 1981) ("A trustee may only avoid as a preference a pre-bankruptcy transfer which enables one creditor to recover more on his claim than other creditors of the same class."). *See generally* 5 *Collier on Bankruptcy*, *supra*, ¶ 547.03[7].

[20]   For this principle in § 548 cases, see, for example, *In re McFarland*, 619 F. App'x at 967-68; *Pension Transfer Corp. v. Beneficiaries under the Third Amendment to Fruehauf Trailer Corp. Ret. Plan No. 003 (In re Fruehauf Trailer Corp.)*, 444 F.3d 203, 210 (3d Cir. 2006); and *BFP v. Imperial Sav. & Loan Ass'n (In re BFP)*, 974 F.2d 1144, 1147 (9th Cir. 1992), *aff'd sub nom. BFP v. Resolution Tr. Corp.*, 511 U.S. 531 (1994).

15

analysis is utilized as a separate element in a § 547 preference action.[21]  To maintain a successful § 547 action, the Trustee must show *both* that the transaction diminished the Debtor's prepetition rights in property *and* that the transaction improved the Defendant's position.

In addition to *Collier*, the Trustee appears to rely on *Warsco v. Preferred Technical Group*, 258 F.3d 557 (7th Cir. 2001) to support his implementation of § 547(b)(5) in defining property of the debtor.  The Trustee, in his brief, quotes a portion of *Warsco*—"[p]roperty of the debtor subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of the bankruptcy proceedings." 258 F.3d at 564 (quoting *Begier*, 496 U.S. at 58).  Yet, this quote from *Warsco*, being a mere recitation from *Begier*, does not warrant any consideration separate from the Court's foregoing analysis of *Beiger*.  At the hearing, when pressed for legal support for his use of § 547(b)(5) in defining property of the debtor, the Trustee claimed reliance on *Collier* and the cases cited in his brief (the Court is left to assume which cases).  However, the Trustee has not provided a specific citation to *Collier* or explained how the cases in his brief support his argument.  On its own review, the Court discovered that in *Collier*'s discussion of § 547, *Collier* considers *Warsco* (along with two other cases) as conflating the diminishment of the estate criterion inherent in the definition of "transfer of an interest of the debtor in property" in §§ 547 and 548, with the analysis required under § 547(b)(5).[22]  *Collier* appears to recognize this

---

[21]    This is established law in the Eleventh Circuit. *In re Egidi*, 571 F.3d at 1160 ("The parties do not dispute that the trustee has met his burden and proved the five elements listed [including § 547(b)(5)].  The sole issue contested by the parties is the 'threshold requirement' in the statute: whether the payments . . . constitute 'transfer[s] of an interest of the debtor in property.'").  This approach is also followed in the other circuits. *See, e.g.*, *Guttman v. Constr. Program Grp. (In re Railworks Corp.)*, 760 F.3d 398, 402 (4th Cir. 2014) (treating "interest of the debtor in property" as separate element); *Schubert v. Lucent Techs. Inc. (In re Winstar Commc'ns, Inc.)*, 554 F.3d 382, 400 (3d Cir. 2009) (same); *Chase Manhattan Mortg. Corp. v. Shapiro (In re Lee)*, 530 F.3d 458, 474 (6th Cir. 2008) (same); *Cage v. Wyo-Ben, Inc. (In re Ramba, Inc.)*, 437 F.3d 457, 459 (5th Cir. 2006) (same); *Kaler v. Cmty. First Nat'l Bank (In re Heitkamp)*, 137 F.3d 1087, 1089 (8th Cir. 1998) (same); *Hansen v. MacDonald Meat Co. (In re Kemp Pac. Fisheries, Inc.)*, 16 F.3d 313, 317 n.1 (9th Cir. 1994) (same); *In re Smith*, 966 F.2d 1527, 1529 (7th Cir. 1992) (same).

[22]    5 *Collier on Bankruptcy*, *supra*, ¶ 547.03[2] n.29 ("The diminishment criterion that inheres within the 'property of the debtor' requirement is sometimes conflated with the 'diminution' requirement that courts have inferred in section 547(b)(5). [*See Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1117 (5th Cir. 1995)] ('primary consideration in determining if funds are property of the debtor's estate is whether the payment of those funds diminished the resources from which the debtor's creditors could have sought payment')."), ¶ 547.03[7] & n.119 ("Several courts have held that section 547(b)(5) requires the trustee to establish that there has been a

"conflation" with condemnation, rather than with approval as suggested by the Trustee.  Further, *Warsco* and the two other cases cited by *Collier* do not eliminate the first inquiry—whether the property rights under consideration are rights of the *debtor*.[23]  To the contrary, these cases appear to reference the diminishment of the estate concept as an *additional* requirement that narrows—rather than expands—the scope of avoidable transfers.[24]  Significantly, none of these cases define property of the debtor as the Trustee would have this Court do—by simply inquiring whether the creditor at issue received more than it would have had the debtor filed a Chapter 7 petition prior to the transaction.  Accordingly, the Trustee has not supported his proposition that

---

diminution of the debtor's estate in order to prevail on its preference claim.") (citing *In re Warsco*, *In re Southmark, Corp.*, and *In re Moses*)), ¶ 547.03[7] n.119 ("Courts sometimes conflate the inferred diminution requirement of section 547(b)(5) with the diminishment requirement that inheres with the phrase 'property of the debtor' under the preamble to section 547(b).").

[23]  Indeed, in *Southmark*, the appellate court reversed the lower court because it had created substantive rights in the bankruptcy context out of thin air, when the court should have examined the rights of the debtor under applicable nonbankruptcy law. 49 F.3d at 1116-18. *But see id.* at 1116 n.17 (citing commentator who would expand definition of property of debtor to include all property which debtor controls, regardless of ownership).  Notably, an essential element of *Southmark*'s holding is that the facts in the record did not warrant the imposition of a constructive trust under applicable state law. *Id.* at 1117-19.

In *Warsco*, the debtor entered into a prepetition asset purchase agreement, which contained the condition that the purchaser buy the debtor's largest unsecured liability from its holder (the "original creditor"). 258 F.3d at 560-63.  The trustee sought to recover from the original creditor the funds the original creditor had received from the purchaser on account of the liability. *Id.* at 562-63.  On appeal, the court held that summary judgment was inappropriate due to the presence of a plausible factual inference that the funds used to purchase the liability were, in substance, part of the consideration for the asset purchase. *Id.* at 568.  A fact most concerning to the court was that the purchaser used the liability to set-off against a substantial portion of the asset purchase price. *Id.* at 567.  If the funds used to purchase the liability were part of the consideration paid for the debtor's assets, then, under the precedent cases cited in that opinion, the funds were deemed to be property of the debtor. *Id.* at 565.  The *Warsco* court did not identify what state law property rights (or federal interests) were at issue.  However, this lack of specific treatment does not mean that the court ignored whether the debtor lost such rights.  To the contrary, a payment to the debtor's creditor that is contractual *consideration* for the purchased assets represents (perhaps too obviously for specific treatment) a loss of an interest of the debtor in property, whether viewed as the assets sold in exchange for such consideration or the debtor's right under the contract to demand the transfer of funds to its creditors.

Finally, in *Moses*, the court stated that its fundamental inquiry was whether the debtor had, prepetition, lost a legal or equitable interest that would have otherwise been property of the estate under § 541(a). 256 B.R. at 645.  That court's holding turned on its ability to determine that the funds at issue were prepetition assets of the debtor that he had the legal right and ability to dispose of freely. *Id.* at 650.  This is exactly what the Court looks to in this case.

[24]  *In re Warsco*, 258 F.3d at 564 (recognizing diminution of estate as "separate element," but apparently one that was part of definition of property of debtor); *In re Southmark, Corp.*, 49 F.3d at 1116-17 (first determining that transferee held legal title to funds, then determining funds would have been distributable to creditors as part of estate before ruling their transfer was avoidable); *In re Moses*, 256 B.R. at 645 (setting forth two-part test: (1) legal or equitable interest by debtor in property, that (2) would have otherwise been part of debtor's estate distributable to unsecured creditors).

17

a debtor's interests in property under §§ 547 and 548 include a trustee's hypothetical avoidance rights under § 544(a)(3) as to a prepetition transfer.

Thus, the Court must examine whether, prior to the delivery and recordation of the Second Deed, the Debtor had an interest under Georgia law in the Property.

(b)     *The Trustee has not met his burden to show that the Debtor transferred an avoidable interest in the Property under state law.*

(i)     Legal title.

Next, the Trustee—assuming for the sake of argument that the First Deed and Agreement, construed together, convey a fee simple interest subject to a condition subsequent—argues that state property law requires the conclusion that a transfer of an interest of the Debtor in the Property occurred.  The Trustee directs the Court to a comment in the *Restatement (First) of Property*, which states:

> When a transferor, having an estate in fee simple absolute transfers an estate in fee simple subject to a condition subsequent, the transferee is regarded as having received the entire estate of the transferor, who, by virtue of his reserved power of termination (defined § 155) has the power to regain his former estate, if and when there is a breach of the condition subsequent.

Restatement (First) of Property § 45, cmt. a. (1936).[25]  The Trustee reasons that because the Debtor "received the entire estate of the transferor" as to a one-half interest in the Property by virtue of the (assumed) conveyance in fee simple subject to a condition subsequent, and because

---

[25]     Section 155 of the *Restatement*—incorporated by reference in the *Restatement* section cited by the Trustee—clarifies that the transfer of a fee simple subject to condition subsequent transfers the entire present interest in the property, while simultaneously "creating" a power of termination as a future interest. Restatement (First) of Property § 155 (1936) ("A power of termination is the future interest *created* in the transferor, or his successor in interest, by a transfer of either an estate in land or an analogous interest in a thing other than land, subject to a condition subsequent." (emphasis added)).

In distinction to the right of reentry (power of termination) created by a fee simple subject to condition subsequent, a fee simple determinable leaves an "untransferred potential residuum[, namely] a possibility of reverter (defined in § 154)." Restatement (First) of Property § 44 (1936).  The possibility of reverter, which "is regarded as 'left in the transferor,'" is "less than [the transferor's] entire interest" where the transferor may again "become entitled to a present interest in the affected thing upon the ending of the transferred interests." Restatement (First) of Property § 154, cmt. a. (1936).  "When, on the other hand, a transferor completely parts with a specified interest, but provides that upon the breach of a condition subsequent, he, the transferor, may retake the interest so transferred, this optional power is regarded as a new creation rather than as a part of the transferor's original interest left in him. Hence a power of termination (defined in § 155) is not a 'future interest left in the transferor' within the meaning of that phrase as used in this Chapter." *Id.*

18

the Debtor had no interest in the Property when he filed his bankruptcy case, he necessarily transferred an interest *of his* in the Property via the Second Deed.  The question here involves an arcane point of Georgia property law—whether the Defendant had an interest that he lost or whether he had a durationally limited interest that simply ended.  The Court need not opine on this matter because the Trustee's motion can be denied on other grounds, as discussed in the next Section.

(ii)    Equitable title; constructive trust.

The Defendant raised a new argument at the hearing on these motions, asserting that the Court should hold that the transfer, if any, from the Debtor to the Defendant does not constitute an avoidable transfer of an interest of the Debtor in property because such interest was held in constructive trust for the Defendant.

As noted above, *Begier*, and numerous cases following *Begier*, state that the prepetition transfer of property in which the debtor holds only bare legal title (equitable title being in another)—not being property of the estate under § 541(a)(1)—is not a transfer of an interest of the debtor in property subject to avoidance under § 547 or, analogously, § 548.  It is well-established in the Eleventh Circuit that, by the operation of § 541(d), property held in a constructive trust does not become property of the estate under § 541(a)(1). *City Nat'l Bank of Miami v. Gen. Coffee Corp. (In re Gen. Coffee Corp.)*, 828 F.2d 699 (11th Cir. 1989); *see also In re Cotton*, No. A01-66915, 2004 WL 2983350, at *4 (Bankr. N.D. Ga. Feb. 17, 2004).

As stated by Judge Bonapfel in *In re Cotton*:

> One situation in which there may be a separation of legal title and equitable interest is when a constructive trust is imposed upon property.  In such a case, a debtor may hold bare legal title while another entity claims the beneficial interest in the property.  A constructive trust is a "trust implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity." O.C.G.A. § 53-12-93(a).  A constructive trust arises, not from the intention of the parties, but in equity to prevent the one holding legal title from retaining title. *United States v. 1419 Mount Alto Road, Rome, Floyd Cnty., Ga.*, 830 F. Supp. 1476, 1481 (N.D. Ga. 1993); *Aetna Life*

19

> *Ins. Co. v. Weeks*, 241 Ga. 169, 172, 244 S.E.2d 46 (1978); *Brown v. Brown*, 209 Ga. 620, 621, 75 S.E.2d 13, 17 (1953). A constructive trust is a remedy, not an independent cause of action, whereby property may be recovered from one who wrongfully holds it. *St. Paul Mercury Ins. Co. v. Meeks*, 270 Ga. 136, 138, 508 S.E.2d 646, 648 (1998). Where the person wrongfully holding has invested such funds or has purchased other property, the beneficiary of a constructive trust can follow the money wherever it can be traced. *Adams v. McGehee*, 211 Ga. 498, 86 S.E.2d 525 (1955). It is generally held that a constructive trust arises at the time the equities arise, not at the time a court determines that a constructive trust exists. *1490 Mount Alto Rd., Rome, Floyd Cnty., Ga.*, 830 F. Supp. at 1481-82 (N.D. Ga. 1993) (noting that although there is no Georgia law directly on point, *Kelly v. Johnson*, 258 Ga. 660, 373 S.E.2d 7 (1988) and *Bateman v. Patterson*, 212 Ga. 284, 285, 92 S.E.2d 8 (1956) support the proposition that constructive trust arises at the time the equities arise); *see In re Gen. Coffee Corp.*, 828 F.2d at 703 n.5 (quoting A. Scott, *The Law of Trusts* § 462.2 (3d ed. 1967) ("[T]here is no foundation whatever for the notion that a constructive trust does not arise until it is decreed by a court. It arises when the duty to make restitution arises, not when that duty is subsequently enforced.")).

*In re Cotton*, 2004 WL 2983350, at *4 (citation format revised for style). Because Georgia law dictates that a constructive trust claimant's equitable rights in property align with the claimant's ability to successfully obtain recognition of her rights in the property via constructive trust, the transfer of legal title to a constructive trust claimant (after the equities warrant impression of a constructive trust on such property in her favor) is not an avoidable transfer. *See, e.g.*, *In re McFarland*, 619 F. App'x at 967 (recognizing that real property transferred from constructive trust may not be transfer of property avoidable under § 548(a)); *Watts v. Pride Util. Constr., Inc. (In re Sudco, Inc.)*, No. 05-1134, 2007 WL 7143065, at *5 (Bankr. N.D. Ga. Sept. 27, 2007) (holding that funds transferred prepetition subject to Georgia constructive trust implied on behalf of subcontractors may not be avoidable under § 547(b)), *reconsidered on other grounds*, 2008 WL 7842086 (Jan. 18, 2008); *Tidwell v. Hendricks (In re McDowell)*, 258 B.R. 296 (Bankr. M.D. Ga. 2001) (holding funds transferred prepetition subject to implied Georgia trust not avoidable under § 547(b)).

Although the Defendant did not raise her constructive trust theory until the hearing, the Trustee did offer a response in oral argument. The Trustee emphasizes that, prior to the recordation of the Second Deed, a bona fide purchaser could have obtained rights in the Property superior to the Defendant's. However, the Trustee did not cite, and the Court has been unable to find, any case directly addressing whether a bankruptcy trustee's theoretical rights as a bona fide purchaser under § 544(a)(3) are relevant to the avoidability of a *prepetition* transfer of legal title of real property from a constructive trust to the constructive trust beneficiary.

The Court recognizes that many of the leading cases in which a constructive trust successfully shielded a transfer from avoidance under §§ 547 and 548 involved transfers of personal, rather than real, property. *See, e.g.*, *Begier*, 496 U.S. at 57 (funds from bank account); *In re Miss. Valley Livestock, Inc.*, 745 F.3d 299, 306 (7th Cir. 2014) (same); *Mitsui Mfrs. Bank v. Unicom Comput. Corp. (In re Unicom Comput. Corp.)*, 13 F.3d 321, 324 (9th Cir. 1994) (same).[26] The Court also recognizes that this distinction potentially implicates the Trustee's avoidance rights and powers as a bona fide purchaser under § 544(a)(3),[27] and that property

---

[26]    Courts have addressed a transfer of real property out of a constructive trust, but in these cases it appears that the trustee would likely have had prior notice of its existence. *See, e.g*, *Montoya v. Garcia, (In re Garcia)*, 367 B.R. 778, 785 (Bankr. D.N.M. 2007).

[27]    Though subject to minor variances in applicable state law, a trustee's rights and powers under § 544(a)(1) and (a)(2) are generally inferior to those of a constructive trust beneficiary. *In re Gen. Coffee Corp.*, 828 F.2d at 706 (holding that in absence of clear state law to contrary, constructive trust beneficiary prevails over judicial lienholder or execution creditor); *Beskin v. Bank of N.Y. Mellon (In re Perrow)*, 498 B.R. 560, 575 (Bankr. W.D. Va. 2013) (constructive trust beneficiary prevails over judicial lienholder or execution creditor under Virginia law); *Elec. M & R, Inc. v. Aultman (In re Aultman)*, 223 B.R. 481, 486 (Bankr. W.D. Pa. 1998) (same result under Pennsylvania law); *Storage Tech. Corp. v. Storage Tech. Fin. Corp. (In re Storage Tech. Corp.)*, 55 B.R. 479, 484 (Bankr. D. Colo. 1985) (same under Colorado law, but recognizing result may be different with realty); *accord In re DVI, Inc.*, 306 B.R. 496, 503 (Bankr. D. Del. 2004) (applying Illinois law). *But see In re Charlton*, 389 B.R. 97, 104 (Bankr. N.D. Cal. 2008) (different result under California law). On the other hand, unrecorded equitable interests in realty are often considered inferior to the rights of a bona fide purchaser referenced in § 544(a)(3). *See, e.g.*, *In re Perrow*, 498 B.R. at 575; *In re DVI, Inc.*, 306 B.R. at 503.

Courts are divided as to whether a trustee can use § 544(a)(3) to strip off a constructive trust on real property still titled in the name of the debtor upon the commencement of the case. *See* Amelia L. Bueche & Megan N. Young, *Beneficiary or Creditor? Where State Constructive Trust Law and the Bankruptcy Distribution Scheme Collide*, 63 Fed. Law. 48 (2016) (discussing positions taken by circuits); *see also In re Gen. Coffee Corp.*, 828 F.2d at 705 (discussing but not deciding question, presumably because trustee's § 544(a)(3) powers were not implicated, no real property being involved); *In re Cotton*, 2004 WL 2983350, at *4-8 (providing thorough discussion of relationship between notice of constructive trusts on real property and § 544(a) under Georgia law, but not resolving question). *See generally* Andrew Kull, *Restitution in Bankruptcy: Reclamation and Constructive Trust*, 72 Am. Bankr. L.J. 265, 292-301 (1998) (arguing that impression of constructive trust might not constitute avoidable transfer and trustee does not have right to assert equities of bona fide purchaser against constructive trust claimant).

recovered pursuant to these rights is generally preserved for the estate. 11 U.S.C. §§ 541(a)(3), 544(a)(3), 550. On the other hand, that *not one* case (including *Begier*) that the Court has examined considers a trustee's § 544(a) rights in this context, suggests that they are not relevant to the issue.[28]

This examination of case law indicates that the debtor's prepetition transfer of real property's legal title to the sole holder of equitable title (pursuant to state law governing constructive trust) does not constitute a transfer of an interest of the debtor in property under §§ 547 or 548. This result seems particularly appropriate in this case. It is beyond dispute that the primary purpose of §§ 547 and 548 avoidance actions is the recovery of equitable interests lost by a debtor.[29] Based on this record, it appears that the Debtor never earned or was given any equity in the Property, the entire equitable interest in the Property at all relevant times resting in the Defendant.[30] For these reasons, the Court rejects the Trustee's argument, and holds that the

---

The Court does not address this issue here because the Defendant obtained record title from the Debtor before the Trustee obtained any actual rights under § 544(a)(3) and, on these facts, the Court would not construe §§ 547 and 548 differently if the Trustee is correct in contending that he could have used § 544(a)(3) to strip off the Defendant's equitable interests in the Property had not the Second Deed been recorded prepetition.

[28] The only factually analogous case that the Court has been able to find held that the prepetition transfer of legal title from the trustee of a constructive trust to the constructive rights beneficiary could not be avoided under § 547, but did not expressly consider whether a trustee's theoretical rights under § 544(a)(3) should be considered in making that determination. *See Gresck v. Brown (In re Brown)*, 227 B.R. 875, 880 (Bankr. S.D. Ind. 1998) (prepetition transfer of legal title to real property pursuant to state court order imposing constructive trust not preference). The Court also takes direction from the reasoning of cases addressing the related, but distinct, question of when the impression of a constructive trust (in distinction to the transfer of legal title therefrom) should be considered an avoidable transfer under §§ 547 and 548. *See, e.g.*, cases cited *infra* note 30.

[29] *In re Loggins*, 513 B.R. at 697 ("If the property transferred is not that of the debtor, the rationales for preference avoidance collapse. Maintaining intercreditor equality is a relevant concern only with regard to the debtor's property, for it is only out of that property that the debtor's creditors normally can expect to be paid." (quoting Tabb, *supra*, § 6.11 at 360)); *see also In re Miss. Valley Livestock, Inc.*, 745 F.3d at 305 ("As Justice Black put it, '[t]he Bankruptcy Act simply does not authorize a trustee to distribute other people's property among a bankrupt's creditors.'" (quoting *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 135-36, (1962))); *Cage v. Wyo-Ben, Inc. (In re Ramba, Inc.)*, 437 F.3d 457, 460 (5th Cir. 2006) ("There can be no preference when a debtor transfers property in which the debtor has no equitable interest." (citing *McCord v. Agard (In re Bean)*, 252 F.3d 113, 117 (2d Cir. 2001))); *see also In re Fin. Res. Mortg., Inc.*, 468 B.R. at 501 (recognizing cases that seem to limit avoidance actions to transfers of equitable interests, but disagreeing). Without adopting a bright-line test, this principle remains true—where possible, §§ 547 and 548 should not be construed to distribute equitable interests that never rested in the debtor.

[30] *Cf. Pitchford v. Smithfield Tr. Co. (In re Pitchford)*, 410 B.R. 416, 420 (Bankr. W.D. Pa. 2009) ("[P]roperty that is the subject of a constructive trust is, as a matter of law, never legally transferred back by a debtor to the beneficiary of such constructive trust when such constructive trust is deemed to have arisen—or, for that matter, when such constructive trust is judicially imposed—because such debtor is deemed to have never owned the equitable interest in such property in the first place . . . ."); *In re Garcia*, 367 B.R. at 785 (imposing trust because

Defendant could defeat the Trustee's §§ 547 and 548 actions by proving that she could have successfully impressed a constructive trust on the Property under Georgia law prior to the Debtor's transfer of his legal interest in the Property.

Though the Defendant must prove she could have successfully sought impression of a constructive trust in her favor under Georgia law, *see In re Sudco, Inc.*, 2007 WL 7143065, at *4, some courts "require that nonbankruptcy grounds for imposing a constructive trust 'be so clear, convincing, strong and unequivocal as to lead to but one conclusion,'" *id.* (quoting *Wachovia Bank of Ga, N.A. v. Vacuum Corp. (In re Vacuum Corp.)*, 215 B.R. 277, 281 (Bankr. N.D. Ga. 1997))). This high standard is imposed by these courts "[b]ecause the generation of constructive trust substantially offends the Bankruptcy Code's general goal of equal distribution." *Id.*[31] Further, some courts require an examination of the equities as between the constructive trust claimant and the unsecured creditors of the debtor's bankruptcy estate. *See, e.g.*, *In re Miss. Valley Livestock, Inc.*, 745 F.3d at 306 ("When a restitution claim is made against a bankruptcy estate, the key question to ask is whether the estate—not the now-defunct debtor—would be unjustly enriched by keeping the claimant's property. The court should focus its attention on the equities of the unauthorized transfer of the claimant's property to the debtor's creditors." (citations omitted)); *Cadle Co. v. Mangan (In re Flanagan)*, 503 F.3d 171, 182 (2d Cir. 2007) (accord); *see also Hill v. Kinzler (In re Foster)*, 275 F.3d 924, 927-28 (10th Cir. 2001) (looking to state law as to existence of trust, but weighing equities as to tracing requirements).[32]

Although she cited general principles of equity recognized in broad terms in Georgia case law and applicable statutes, the Defendant provided no factually analogous case that

---

debtor's parents "were 'loaning' bare legal title to [debtors] for a very limited period of time for a very limited purpose, with the expectation that the property would be promptly deeded back," concluding that debtors *never* had equitable title); *In re Aultman*, 223 B.R. at 486 ("That being the case, the debtors *never legally transferred* the equitable interest in their realty to Electric M & R, which means that there does not exist a transfer of said equitable interest which this Court could now avoid as preferential pursuant to § 547(b).").

[31] *But see Kull*, *supra* note 27, at 276, 301 (arguing that, properly understood, equities of bankruptcy and common law align).

[32] Here, there appears no dispute that the Defendant is the sole equitable claimant. *Cf. In re Sudco, Inc.*, 2007 WL 7143065, at *6 n.3 (recognizing that constructive trust may not prevent avoidance of a transfer that prejudiced other similarly situated claimants).

demonstrates that she could have successfully impressed a constructive trust on the Property

under Georgia law prior to the Debtor's transfer of legal title.  However, in its own research, the

Court located *Ansley v. Raczka-Long*, where the Georgia Supreme Court addressed the doctrine

of constructive trust on facts analogous to those on the record here. 293 Ga. 138, 744 S.E.2d 55

(2013).

In *Ansley*, the Court was faced with the question of ownership as to two pieces of

property—an empty lot and a lot with a house, both titled in the name of a man ("Long") at his

death. *Id.* at 139, 744 S.E.2d at 57.  Upon Long's death, the administrator of Long's estate

brought a quiet title action, in which Long's wife obtained summary judgment that the title was

properly vested in her. *Id.*  The Georgia Supreme Court reversed the lower court's grant of

summary judgment to the wife, because the affidavits submitted in opposition to the wife's

motion made out a colorable case that the properties were subject to a constructive trust imposed

in favor of Ansley. *Id.* at 141, 744 S.E.2d at 59.

The affidavits showed that Ansley, as the original owner of the properties, entered into an

arrangement with Long, and some fellow members of the construction company by which he

was employed, to build houses on the two properties and then offer them for sale. *Id.* at 140, 744

S.E.2d at 58.  This was to be the first step in a larger development venture. *Id.*  After Ansley had

expended a substantial amount in the construction of a house on the first lot, Long approached

the group and expressed an interest in purchasing the second lot and building a house thereon. *Id.*

However, because Long did not have collateral sufficient to secure a construction loan large

enough to purchase the second lot and build a house on it, Ansley agreed to deed him both the

first lot and the second lot so that he could obtain such a loan, but on the condition that if Long

obtained the construction loan he would deed back the first lot to Ansley and pay her an agreed-

on purchase price for the second lot. *Id.*  On the other hand, if Long was unable to obtain the

financing, the affidavits showed that Long had agreed to deed both lots back to Ansley. *Id.* at

140-41, 744 S.E.2d at 58.  Long never obtained the financing and died without having paid for

the properties or having deeded them back to Ansley. *Id.* at 141, 744 S.E.2d at 59.

24

In reaching its holding, the *Ansley* Court observed that under Georgia law:

> A constructive trust "is a trust implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity." O.C.G.A. § 53-12-132. "Equity will not allow one with a legal interest in a piece of property a windfall recovery when the beneficial interest should flow to another." *Weekes v. Gay*, 243 Ga. 784, 786, 256 S.E.2d 901, 904 (1979). A "constructive trust is a remedy created by a court in equity to prevent unjust enrichment." *St. Paul Mercury Ins. Co.*, 270 Ga. at 137, 508 S.E.2d at 648.

*Id.* at 141, 744 S.E.2d 55, 58 (citation format revised for style). The holding in *Ansley* makes clear that an "established principle of equity"—prevention of unjust enrichment—under O.C.G.A. § 53-12-132 is violated where a grantor—having transferred legal title to the grantee based on an unrecorded promise by the grantee to either pay for the property or, alternatively, deed the property back to the grantor—stands to lose all interest in the property without receiving payment simply because the land records do not reflect the transaction.

Here, the Defendant's Affidavit (to which the Trustee did not object) shows that she intended to convey an interest in the Property to the Debtor on the condition that he perform certain repairs by a certain date, and that if he failed to timely perform the repairs he would cause the legal title of the Property to be in her name alone. The Defendant's Affidavit shows that the Debtor failed to make the repairs and indicates that the Debtor never paid any money or transferred any other consideration for the Property. The Defendant's Affidavit reflects her understanding that the Second Deed was executed and delivered in accordance with the Agreement.

Although at first blush these facts seemingly establish a winning argument for the Defendant, the Court declines to grant her summary judgment on this basis. The Defendant first made this argument at the hearing and neither party has briefed this issue. Accordingly, the Court gives the Trustee a more ample opportunity to respond and present any defenses applicable under state law. *Cf. In re Miss. Valley Livestock, Inc.*, 745 F.3d at 307 ("On remand, the court should look to [state] law to determine whether [the claimant] has a good claim in restitution

against the estate (and ultimately [the debtor's] creditors).  The court should also consider

whether equitable defenses bar [the debtor] from recovering on that claim."); *Haber Oil Co. v.

Swinehart (In re Haber Oil Co.)*, 12 F.3d 426, 443 (5th Cir. 1994) ("The requirements of

pleadings, proof, and findings must be strictly enforced against constructive trust claimants to

protect the integrity of the bankruptcy system.").  Further, as noted by the Trustee at the hearing,

the Debtor executed the Second Deed on the same day that his bank accounts were garnished by

a creditor holding a judgment in an amount in excess of $190,000.  Construing the facts and

associated reasonable inferences in favor the Trustee, it is possible that the Second Deed may not

have been executed pursuant to the arms-length agreement put forward by the Defendant in her

Affidavit.  Accordingly, this matter should be left for consideration at trial.

> (2) <u>Reasons for denying the Defendant's Motion for summary judgment that
> the Defendant did not receive the transfer of an interest of the Debtor in
> property.</u>

>> (a) *The Defendant has not met her burden to show that the Agreement
>> was executed contemporaneously with the First Deed.*

The Court must deny summary judgment to the Defendant on her fee-simple-subject-to-

condition-subsequent argument (discussed in relation to the Trustee's Motion in Section

II.A.1.b.*i.*, *supra*), because the Defendant has not established that the execution of the Agreement

and the First Deed actually conveyed a fee simple subject to a condition subsequent.

In evaluating this question, the Court again turns to Georgia law.  "In conveyancing, the

intent of the parties is of prime importance." *Dep't of Transp. v. Knight*, 238 Ga. 225, 226, 232

S.E.2d 72, 73 (1977).  As the Trustee notes, O.C.G.A. § 44-6-21 states:

> The word "heirs" or its equivalent is not necessary to create an
> absolute estate.  Every properly executed conveyance shall be
> construed to convey the fee unless a lesser estate is mentioned and
> limited in that conveyance.  If a lesser estate is expressly limited, the
> courts shall not, by construction, increase such estate into a fee but,
> disregarding all technical rules, shall give effect to the intention of
> the maker of the instrument, as far as the same is lawful, if the
> intention can be gathered from the contents of the instrument.  If the
> court cannot gather the intention of the maker from the contents of

26

the instrument, it may hear parol evidence to prove the maker's intention.

O.C.G.A. § 44-6-21. "A deed will not be construed as a grant on condition subsequent unless the language used by express terms creates an estate on condition, or unless the intent of the grantor to create a conditional estate is manifest from a reading of the entire instrument." *Knight*, 238 Ga. at 226, 232 S.E.2d at 73 (quoting *Thompson v. Hart*, 133 Ga. 540, 66 S.E. 270 (1909) (syllabus)). The above-cited law suggests that if an intent can be determined from the face of a deed, such intent is, without exception, controlling. The Defendant argues against this interpretation by pointing to the Georgia Supreme Court's decision in *Hardman v. Dahlonega-Lumpkin County Chamber of Commerce*, 238 Ga. 551, 233 S.E.2d 753 (1977).

*Hardman*, like this case, involved a form deed. *Id.* at 551, 233 S.E.2d at 754. The deed granted a tract of land to the grantees and their "heirs, and assigns, forever, in Fee Simple," for a stated consideration, and "subject to the agreement made by the above parties" on that same day. *Id.* at 551, 233 S.E.2d at 754-55. The agreement provided: "In the event [certain events had not occurred by a date certain], title to the above described property will revert to [the grantor]." *Id.* at 551, 233 S.E.2d at 754. The Georgia Supreme Court affirmed the trial court's ruling that the two documents, when construed together, made clear that the parties intended a defeasible fee simple rather than a fee simple absolute. *Id.* at 553, 233 S.E.2d at 755.

*Hardman* can be distinguished from this case on its facts, for the deed in that case contained an express reference to the agreement that rendered the fee simple estate defeasible rather than absolute, while here the First Deed contains no reference to the Agreement. The Defendant acknowledges this distinction but points to the *Hardman* court's recognition of "the rule[] that contemporaneous documents must be construed together," *id.*, which appears to have no requirement that the documents expressly refer to one another.[33] On the other hand, O.C.G.A.

---

[33] The *Hardman* court cited two cases for this rule, *Berger v. Mercantile National Bank*, 231 Ga. 680, 203 S.E.2d 479 (1974) and *Dyal v. Foy & Shemwell, Inc.*, 159 Ga. 848, 126 S.E. 783 (1925). 238 Ga. at 553, 233 S.E.2d at 755. *Berger* appears to have been cited because in it the common law doctrine regarding contemporaneously executed documents is imported into a case governed by Georgia's adopted version of the *Uniform Commercial Code*. *See Berger*, 231 Ga. at 680, 203 S.E.2d at 480. *Berger*, in turn, cites *Dyal* as representative of that common law doctrine. *Id.* The rule, as a general matter, does not seem to require express cross-referencing between the documents under consideration. *See, e.g., Baker v. Jellibeans, Inc.*, 252 Ga. 458, 460, 314 S.E.2d 874, 877 (1984)

§ 44-6-21 might curtail this rule's application to deeds.  The Defendant argues that even if

Georgia law (such as O.C.G.A. § 44-6-21) would otherwise prevent the Court's consideration of

the Agreement and the parties' statements of intention regarding the transaction out of which the

First Deed arose, inconsistencies in the First Deed open the door for such evidence.[34]

The Court need not at this time predict whether the Defendant is correct in her assertions

of Georgia law on this issue, because she has not shown from the record that the First Deed and

the Agreement were executed contemporaneously.

> "Contemporaneous" in this setting does not "connote perfect or
> absolute coincidence in point of time" and has been held to mean
> "reasonably contemporaneous." *Dabbs v. Key Equip. Fin., Inc.*, 303
> Ga. App. 570, 574, 694 S.E.2d 161, 165 (2010) (citation,
> punctuation and footnote omitted); *see also Manry v. Hendricks*, 66
> Ga. App. 442, 453, 18 S.E.2d 97, 104 (1941) ("One thing is
> contemporaneous with a given transaction when it is so related in
> point of time as reasonably to be said to be a part of such
> transaction.").   Nevertheless, a nine-week interval between the
> execution of documents strongly suggests that those documents are
> not contemporaneous. *See Newell Recycling of Atl., Inc. v. Jordan
> Jones & Goulding, Inc.*, 317 Ga. App. 464, 466-67, 731 S.E.2d 361,
> 361 (2012) (documents dated three months apart are not
> contemporaneous).
> . . .
> *Compare Patterson v. Bennett St. Props., L.P.*, 314 Ga. App.
> 896, 900, 726 S.E.2d 147, 150-51 (2012) (guaranty and two other
> agreements were signed within three days and were part of the same
> transaction); *Hong Invs., LLC v. Sarsfield*, 312 Ga. App. 82, 83, 717
> S.E.2d 679, 680 (2011) (lease and guaranty executed one day apart
> were sufficiently contemporaneous and part of the same
> transaction); *Bd. of Regents of the Univ. Sys. of Ga. v. Doe*, 278 Ga.
> App. 878-79, 630 S.E.2d 85, 87 (2006) (documents signed [twenty-
> four] days apart were contemporaneous); *Manry*, 66 Ga. App. at
> 453-54, 18 S.E.2d 97, 104-05 (documents dated six days apart in the
> same transaction held to be contemporaneous); *Marietta Sav. Bank
> v. Janes*, 66 Ga. 286, 288-89 (1881) ([single] contract in writing

---

("[A]s long as all the necessary terms are contained in signed contemporaneous writings, the statutory requirements
and purpose of the Statute of Frauds have been met, whether or not the writings are cross-referenced."); *Hong Invs.,
LLC v. Sarsfield*, 312 Ga. App. 82, 83, 717 S.E.2d 679, 680 (2011) (applying doctrine "although neither the lease
nor the guaranty makes reference to the other").

[34]    *See supra* note 5.

even though comprised of a note and letters dated [twenty] days apart).

*Bd. of Regents of Univ. Sys. of Ga. v. Winter*, 331 Ga. App. 528, 533 & n.7, 771 S.E.2d 201, 205-06 & n.7 (2015) (citation format revised for style).

There is a genuine issue of fact as to whether the executions of the Agreement and the First Deed meet this standard.  The Defendant's Affidavit states that the First Deed was executed "pursuant to the Agreement," and "conveyed the property subject to the terms of the Agreement, [the Defendant retaining] at all times, a reversionary interest in the land."  However, this statement can be countered by several points.  First, though not addressed by the parties in their briefs or at the hearing, the Agreement is dated May 14, 2013, while the First Deed is dated June 12, 2013, nearly a month apart.[35]  There has been no explanation offered for this delay.  The month between the executions of these two documents is too great of a gap in time to deem the documents as being executed contemporaneously without giving the parties an opportunity to present evidence relevant thereto.  Second, the Defendant's statement that she intended to retain "a reversionary interest in the land" looks more like a naked legal conclusion, made to gain summary judgment, than a credible presentation of her (or the Debtor's) actual intentions surrounding the transaction.[36]  *See Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990) (disregarding legally conclusory statements in affidavit).  Accordingly, the Defendant's Motion is insufficiently supported on this point, and the Court need not opine further on the other merits of the Defendant's theory.

(b)    *The Defendant has failed to meet her burden to show a mistake relievable in equity.*

In the alternative, the Defendant urges that if the Court holds that the Agreement and the First Deed, as executed, cannot be construed as together creating a fee simple subject to

---

[35]    *See supra* text accompanying note 4; *see also supra* note 4 (discussing conflicting dates submitted by Defendant).

[36]    The right of reentry (power of termination) that the Defendant maintains was created as part of the conveyance accomplished by the First Deed is not a reversionary interest. *See supra* note 25; *see also* Restatement (First) of Property § 155 cmt. c., ill.1 & 3.

condition subsequent, the Court should reform the documents to do so, or alternatively, recognize the parties' rescission of the transaction. In her brief, the Defendant cites as a grounds for this remedy, mutual mistake of fact, citing O.C.G.A. § 23-2-31,[37] which states: "Equity will not reform a written contract unless the mistake is shown to be the mistake of both parties; but it may rescind and cancel upon the ground of mistake of fact material to the contract of one party only." O.C.G.A. § 23-2-31. Other related statutes provide: "If the form of conveyance is, by accident or mistake, contrary to the intention of the parties in their contract, equity shall interfere to make it conform thereto," O.C.G.A. § 23-2-25; "A mistake relievable in equity is some unintentional act, omission, or error arising from ignorance, surprise, imposition, or misplaced confidence," O.C.G.A. § 23-2-21(a); and "The power to relieve mistakes shall be exercised with caution; to justify it, the evidence shall be clear, unequivocal, and decisive as to the mistake," O.C.G.A. § 23-2-21(c).

The Defendant argues that she and the Debtor were mistaken in believing that the Debtor was going to obtain employment—employment he was denied because of his poor credit rating. It is well-settled under Georgia law that "mistake of a past or present fact may warrant equitable relief, but a mistake in opinion or mental conclusion as to an uncertain future event is not ground for relief." *Henry v. Thomas*, 241 Ga. 360, 361, 245 S.E.2d 646, 648 (1978) (quoting *Callan Court Co. v. Citizens & S. Nat'l Bank*, 184 Ga. 87, 130, 190 S.E. 831, 854 (1937)). The Defendant's Affidavit shows that, at some point, the Defendant and the Debtor both "assumed that the Debtor was about to begin employment."[38] The record also reflects that this assumption was supported by a job offer extended to the Debtor. The record does not establish that either

---

[37] The Defendant cites O.C.G.A. § 2-3-31; however, such statute does not exist in the O.C.G.A., and if it did, the provision would be in the Chapter of the O.C.G.A. establishing the Georgia Department of Agriculture. The language quoted by the Defendant appears in O.C.G.A. § 23-2-31.

[38] Defendant's Motion, *supra* note 3, at 24 (Ex. 1 ¶ 8) ("[The Debtor] and I [the Defendant/affiant] both assumed that [the Debtor] was about to begin employment in the summer of 2010. Unexpectedly, [the Debtor] lost the employment offer due to his credit rating, and he was therefore unable to pay for the repairs or otherwise to pay for his share of the home ownership."). It appears that the Defendant's reference to the Debtor beginning employment "summer of 2010" is a typographical error. The Defendant's statement of uncontested facts contains otherwise identical language referring to the "summer of 2013." *Id.* at 19.

the Debtor or the Defendant were mistaken as to the nature of the job offer (particularly as to its revocability or conditionality) or any other past or present fact.  This record demonstrates that the parties held a mistaken opinion and mental conclusion (though one that seems reasonable) as to an uncertain future event—the Debtor's securing the offered job.  Accordingly, the Defendant has failed to demonstrate a mistake of present or past fact relievable in equity—either by rescission or reformation.

At the hearing, the Defendant raised, as an alternative ground for her requested equitable relief, mutual mistake of law.  "An honest mistake of the law as to the effect of an instrument on the part of both contracting parties, when the mistake operates as a gross injustice to one and gives an unconscionable advantage to the other, may be relieved in equity." O.C.G.A. § 23-2-22. As demonstrated in the Court's discussion of the doctrine of contemporaneously executed documents, the Defendant has not shown that the conveyance represented by the First Deed did not have the legal effect intended by the parties.[39]

Because the Defendant has not established her entitlement to the equitable remedies of rescission or reformation under Georgia law, the Court need not reach the next question— whether these doctrines can be invoked to defeat the Trustee's avoidance actions in this case.[40]

For all of these reasons, the Court denies the parties' respective motions for summary judgment regarding whether the Debtor transferred an avoidable interest in property.

**B.**    *Debtor's § 522(g) Exemption Rights*

Next, the Defendant argues that any transfer avoided by the Trustee may be exempted by the Debtor under § 522(g)(1) as a voluntary, disclosed transfer of property that would have been

---

[39]    *See* discussion *supra* Section II.A.2.a.

[40]    *Cf. Sulmeyer v. Pac. BMW (In re Grand Chevrolet)*, 26 F.3d 130, 1994 WL 242135 (9th Cir. 1994) (unpublished) (holding that return of vehicles pursuant to parties' prepetition rescission of executory contract was not transfer of debtor's interest in property); *Bank of Am., N.A. v. Gallo (In re Gallo)*, 539 B.R. 88 (Bankr. E.D.N.C. 2015) (avoiding lis pendens filed by bank seeking to reform deed of trust, holding postpetition reformation of deed barred by trustee's strong-arm powers under § 544); *Stearns Bank, N.A. v. Rent-A-Tent, Inc. (In re Rent-A-Tent, Inc.)*, 468 B.R. 442 (Bankr. N.D. Ga. 2012) (holding postpetition reformation barred by trustee's § 544(a)(3) rights as bona fide purchaser under Georgia law).

exemptible had it not been transferred prior to Debtor's filing for bankruptcy.[41]  The Trustee

argues that the transfer is not exemptible under § 522(g) because the transfer was "voluntary"

within the meaning of § 522(g).

The Defendant's Motion on this issue must be denied.  It is the Debtor, not the

Defendant, who is entitled to assert an exemption under § 522(g). *See* 4 *Collier on Bankruptcy*,

*supra*, ¶ 522.12[3][a] & n.15 (citing legislative history). *Cf. In re Moses*, 256 B.R. at 651 n.8

(leaving undisturbed lower court's ruling that transferee obtaining security interest in exempt

funds has no standing to assert debtor's exemption as defense to preference action).  The Court

rules that the Defendant is without standing to raise the Debtor's rights in defense to the

Trustee's action.  Accordingly, the Court denies the parties' motions on this matter, without any

prejudice to the Debtor's timely raising his rights either by intervention in this action or some

other appropriate procedure.[42] *Cf. In re Taylor*, 8 B.R. 251 (Bankr. D.D.C. 1981) (applying

doctrine of laches to prevent assertion of debtor's right to exempt property brought into estate by

preference action).

---

[41]    Section 522(g)(1) provides:

> Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—
>
> (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and
>
> (B) the debtor did not conceal such property.

11 U.S.C. § 522(g)(1).

[42]    The Court notes that the degree to which pressure was exerted by the Defendant on the Debtor to take any actions accomplishing such transfer may be relevant in determining the voluntary nature of the transfer.  The Court does not hypothesize on the correct test for determining whether a transfer was voluntary, as the contours of a "voluntary" transfer are not yet clearly defined. *See, e.g., Riley v. Sullivan (In re Sullivan)*, 387 B.R. 353 (B.A.P. 1st Cir. 2008); *In re Yarber*, 522 B.R. 328 (Bankr. D. Or. 2014); *In re Trevino*, 96 B.R. 608 (Bankr. E.D.N.C. 1989); *Washkowiak v. Glenwood Med. Grp. (In re Washkowiak)*, 62 B.R. 884 (Bankr. N.D. Ill. 1986); *Terry v. Witten & Carter, P.C. (In re Terry)*, 56 B.R. 538 (Bankr. D. Vt. 1986); *Tanton v. Nolen (In re Nolen)*, 40 B.R. 6 (Bankr. M.D. Ala. 1984); *Evingham v. Trucking Affiliates of Cent. N.Y. Credit Union (In re Evingham)*, 27 B.R. 128 (Bankr. W.D.N.Y. 1983); *Reaves v. Sunset Branch, Nat'l Bank of S.D. (In re Reaves)*, 8 B.R. 177 (Bankr. D.S.D. 1981).

### C.    *Ordinary Course of Business Defense under § 547(c)(2)*

The Defendant argues that the transfer, if any, is protected from a § 547 preference action because the transaction falls within the ordinary course of business exception provided by § 547(c)(2).[43]   The Trustee argues the opposite, and both parties seek summary judgment on this issue.   The Defendant would have the burden at trial to prove that the elements of this exception are met. 11 U.S.C. § 547(g).

Section 547(c)(2) prohibits a trustee from avoiding a preferential transfer to the extent the transfer was: (1) "in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;" and (2) "made in the ordinary course of business or financial affairs of the debtor and the transferee" or "made according to ordinary business terms." 11 U.S.C. § 547(c)(2); *see also Goodman v. S. Horizon Bank (In re Norsworthy)*, 373 B.R. 194, 205 (Bankr. N.D. Ga. 2007).

The purpose of this exception is to "leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." *Union Bank v. Wolas*, 502 U.S. 151, 160 (1991) (quoting H.R. Rep. No. 95-595, at 373 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6329).   "For the case of a consumer, [§ 547(c)(2)] uses the phrase 'financial affairs' to include such nonbusiness activities as payment of monthly utility bills." *Goodman v. Credit Union of Ga. (In re Gaines)*, 502 B.R. 633, 640 (Bankr. N.D. Ga. 2013) (quoting H.R. Rep. No. 95-595, at 373, *reprinted in* 1978 U.S.C.C.A.N. at 6329).

---

[43]    Section 547(c)(2) provides:

> The trustee may not avoid under this section a transfer . . . to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was—
>
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>
> (B) made according to ordinary business terms.

11 U.S.C. § 547(c)(2).

Accordingly, the first question is whether the debt to the Defendant—the Debtor's obligations under the Agreement—was incurred in the ordinary course of both the Defendant's and the Debtor's business or financial affairs. The Trustee argues that because the Defendant failed to show a history of similar transactions of the Debtor and the Defendant (either with each other or with third parties), the Defendant must fail on this first element as a matter of law.

Historically speaking, "[a]s compared to other areas of preference law, there is scant case law on the issue of whether or not a debt has been incurred in the ordinary course of business between the debtor and the transferee." *Huffman v. N.J. Steel Corp. (In re Valley Steel Corp.)*, 182 B.R. 728, 735 (Bankr. W.D. Va. 1995); *see also* 5 *Collier on Bankruptcy*, *supra*, ¶ 547.04[2][a][i] (same).[44] Case law addressing this element in the context of a consumer's financial affairs seems particularly sparse. Consumer cases present unique challenges, for many transactions (such as buying a car or house) are quite ordinary among the general population, yet often unprecedented in the consumer's life. This difficulty highlights what has been described as split of authority regarding first-time transactions. *See Redmond v. CJD & Assocs., LLC (In re Brooke Corp.)*, 536 B.R. 896, 912-13 (Bankr. D. Kan. 2015) (recognizing split as demonstrated in 5 *Collier on Bankruptcy*, *supra*, ¶ 547.04[2][a][i]); *Wagner v. Dakota W. Credit Union (In re Weaver)*, No. 07-7004, 2007 WL 4868302, at *3 (Bankr. D.N.D. July 25, 2007) (outlining split and citing cases validating first-time transactions). Unfortunately, many of the cases referring to this split do not clearly distinguish between the requirements of the first element—that the underlying debt was ordinary—and the requirements of the second element—that the transfer itself was made in the ordinary course or made on ordinary business terms.

The subjective view of the first element, particularly, would seem to require proof that the debt falls within a baseline of dealings that have actually occurred as between the two actual parties, though this would cause every debt incurred in a first-time transaction to be per se

---

[44]   However (perhaps due to the broadening of the ordinary course exception accomplished by BAPCPA), it seems, based on the Court's research, that courts and parties are giving this first element more consideration than in times past. *See generally* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. No. 109-8, 119 Stat. 23; 5 *Collier on Bankruptcy*, *supra*, ¶ 547.04[2] (describing BAPCPA's changes to § 547(c)(2)).

unordinary. *In re Weaver*, 2007 WL 4868302, at *3; *see, e.g.*, *Miller v. Kibler (In re Winters)*,

182 B.R. 26, 29 (Bankr. E.D. Ky. 1995); *Comm. of Unsecured Creditors for Pittsburgh Cut*

*Flower Co. v. Hoopes (In re Pittsburgh Cut Flower Co.)*, 124 B.R. 451, 461 (Bankr. W.D. Pa.

1991); *McCullough v. Garland (In re Jackson)*, 90 B.R. 793, 797 (Bankr. D.S.C. 1988).  Courts

that take this position are generally regarded as representing a small minority, and it appears that

the cases most often cited as requiring a baseline of debts within which the underlying debt was

incurred (in distinction to a first-time transfer in payment of that debt)[45] were decided under the

pre-BAPCPA version of § 547(c)(2).[46]

Most modern cases cited as holding a minority subjective view require a baseline of

transfers to satisfy § 547(c)(2)(A) (which is one way to show that the transfer was ordinary)

rather than requiring a baseline of debts. *See KH Funding Co. v. Escobar (In re KH Funding*

*Co.)*, 541 B.R. 308, 313-14 (Bankr. D. Md. 2015) (citing *Conti v. Sampson-Bladen Oil Co. (In re*

*Clean Burn Fuels, LLC)*, No. 12–9081, 2014 WL 2987330, at *5 (Bankr. M.D.N.C. July 1, 2014)

and *Pryor v. New York (In re Waring)*, 491 B.R. 324, 333 (Bankr. E.D.N.Y. 2013) as supporting

minority view, though underlying debts in both cases were admittedly ordinary).

Despite this muddle, the growing trend in the case law is clear as to the first element—a

transfer made pursuant to a first-time transaction debt can fall within the ordinary course

---

[45]    This distinction should be carefully considered before pitting a case against the first-time transaction case law
generally, though it seems to have been overlooked by some.  For example, the courts in *In re Weaver* and
*Household Bank* cite *Brizendine v. Barrett Oil Distributors, Inc. (In re Brown Transport Truckload, Inc.)*, 152 B.R.
690 (Bankr. N.D. Ga. 1992) as supporting the proposition that a debt incurred in a first-time transaction can never be
ordinary. *Household Bank F.S.B.*, 334 F.2d at 642; *In re Weaver*, 2007 WL 4868302, at *3.  However, *Brown*
*Transport* merely holds that a *transfer* made pursuant to any debt cannot be subjectively ordinary *within the*
*meaning of § 547(c)(2)(A)*—then codified at § 547(c)(2)(B)—unless some baseline of transfers is established. *See In*
*re Brown Transp. Truckload, Inc.*, 152 B.R. at 692.

[46]    Before BAPCPA, current § 547(c)(2)(A) and (B) (which are now disjunctive) were codified conjunctively in
§ 547(c)(2)(B) and (C), constituting second and third elements to an ordinary course defense. 5 *Collier on*
*Bankruptcy*, *supra*, ¶ 547.04[2] (describing BAPCPA's changes to § 547(c)(2)).  The divergent views of the first
element may be attributable to pre-BAPCPA imprecision that conflated aspects of § 547(c)(2)(A) and (B) into the
first element.  For example, *Collier* cites *Fitzpatrick v. Central Communications & Electronics, Inc. (In re*
*Tennessee Valley Steel Corp.)*, 203 B.R. 949 (Bankr. E.D. Tenn. 1996) as defending a subjective view that would
require a baseline of debts as between the parties. *Id.* ¶ 547.04[2][a][i] & n.37.  However, such language is mere
dicta (as *Tennessee Valley Steel* was decided on facts establishing a baseline of debts) and reflects an imprecise
treatment of the first element. *See, e.g.*, 203 B.R. at 954 ("The subjective prong (subsection (B)) requires proof that
the debt and its payment are ordinary in relation to other business dealings between that creditor and that debtor."
(quoting *In re Fred Hawes Org.*, 957 F.2d at 244)).

exception if the transferee can show that the debt would be considered as occurring ordinarily between similarly situated parties. *Jubber v. SMC Elec. Prods., Inc. (In re C.W. Mining Co.)*, 798 F.3d 983, 992 (10th Cir. 2015) ("But we agree with the three circuits that have addressed the issue, who have held that a first-time transaction can qualify for the exception. . . .  After all, the statute refers to the 'ordinary course of business or financial affairs *of* the debtor and the transferee,' not *between* the debtor and the transferee."); *see also Wood v. Stratos Prod. Dev., LLC (In re Ahaza Sys., Inc.)*, 482 F.3d 1118, 1125-26 (9th Cir. 2007); *Kleven v. Household Bank F.S.B.*, 334 F.3d 638, 642-43 (7th Cir. 2003); *Gosch v. Burns (In re Finn)*, 909 F.2d 903, 908 (6th Cir. 1990); *see also, e.g.*, *In re Brooke Corp.*, 536 B.R. at 916; *Stevenson v. Leonard A. Turowski & Son Funeral Home, Inc. (In re Nowlen)*, 452 B.R. 619 (Bankr. E.D. Mich. 2011).  In consumer cases, this has resulted in tax refund anticipation loans and debts for a spouse's funeral costs being considered as incurred within a debtor's ordinary financial affairs. *Household Bank F.S.B.*, 334 F.3d at 642 (refund anticipation loan); *In re Nowlen*, 452 B.R. at 621 (funeral costs).

As the Ninth Circuit has observed:

> When there are no prior transactions with which to compare, the court may analyze other indicia, including whether the transaction is out of the ordinary for a person in the debtor's position, or whether the debtor complied with the terms of the contractual arrangement, generally looking to the conduct of the parties, or to the parties' ordinary course of dealing in other business transactions.

*In re Ahaza Sys., Inc.*, 482 F.3d at 1126 (9th Cir. 2007) (quoting *Meeks v. Harrah's Tunica Corp. (In re Armstrong)*, 231 B.R. 723, 731 (Bankr. E.D. Ark. 1999) (citations omitted)).  "[H]owever, this analysis should be as specific to the actual parties as possible." *Id.*  "Only if a party has never engaged in similar transactions would we consider more generally whether the debt is similar to what we would expect of similarly situated parties, where the debtor is not sliding into bankruptcy." *Id.*  In making this determination with regard to consumer affairs in the absence of particular evidence on the point, it seems that judicial notice of cultural practices might be helpful. *See* 21B Wright, Miller & Cooper, *supra*, § 5105 (stating that courts may take notice of current cultural trends); *see, e.g.*, *In re Nowlen*, 452 B.R. at 621 ("It is perfectly normal for a

debtor who is faced with the death of a close family member to incur expenses for funeral services."). Thus, the Trustee's argument—that the Defendant provided no history of similar transactions—is insufficient to establish that the Agreement was not incurred in the ordinary course of its two parties' business or financial affairs, and the Trustee is accordingly not entitled to summary judgment on this ground.

On the other hand, beyond a passing remark that the Agreement represents "an arms length transaction," the Defendant makes no argument that the Agreement was incurred in the ordinary course of the Defendant's and the Debtor's business or financial affairs. The transaction was certainly not an ordinary commercial transaction. However, it is possible that the Agreement could be reasonably construed as a normal transaction in these consumers' financial affairs.

Here, there is no direct history of similar exchanges by the parties, thus the Court must look at whether the transaction represented by the Agreement is "similar to what we would expect of similarly situated parties, where the debtor is not sliding into bankruptcy." *In re Ahaza Sys., Inc.*, 482 F.3d at 1126. The Court cannot say that the transaction at issue is per se outside of what is expected for similarly situated parties. The transaction occurred between two persons who had a long-term personal relationship, who apparently shared some degree of trust, and who were content to share the Property. From the record, it appears that the Defendant needed repair work, the Debtor needed a place to live, and the Agreement provided a framework to accomplish this. As noted by the Defendant at the hearing, there is no evidence that the Agreement was executed with any detriment in mind as to either party's creditors. Though the Debtor was arguably sliding into bankruptcy, the Agreement appears designed to increase, not decrease, the assets that would be available to his creditors. And, while the transaction may reflect a mix of trust and distrust among the parties, the Court observes that non-traditional living arrangements such as this are not unusual in today's world.

Based on this record, which leaves many questions unanswered, the Court declines to grant summary judgment on this element, but instead reserves it for determination at trial.

The Trustee next argues that the Defendant cannot show that the Debtor's transfer of property was "made in the ordinary course of business or financial affairs of the debtor and the transferee" or "made according to ordinary business terms."  The Defendant argues that the alleged transfer was "[t]he mere conclusion of an arms length transaction," and also cites § 547(c)(2)(B) without explanation.  In his brief, the Trustee argues that the transaction fell outside of the financial affairs of the parties to the Agreement because the Second Deed was executed after a demand for this action by the Debtor and after the Debtor did not get a job as he had hoped.  In addressing § 547(c)(2)(B), the Trustee merely points to the Debtor's lack of evidence.

The Court agrees with the Trustee as to § 547(c)(2)(B).  The inquiry under § 547(c)(2)(B) is whether the transfer was made on ordinary business terms, which, in the Eleventh Circuit, requires proof of some objective standard. *Carrier Corp. v. Buckley (In re Globe Mfg. Corp.)*, 567 F.3d 1291, 1298 (11th Cir. 2009) ("The 'ordinary business terms' requirement, by contrast, is objective in nature, requiring proof that the payment is ordinary in relation to prevailing industry standards."); *Flatau v. Curington, LLC (In re Nobles)*, No. 09-5106, 2010 WL 3260128, at *4 (Bankr. M.D. Ga. Aug. 18, 2010); *Markham v. Lerner (In re Diagnostic Instrument Grp., Inc.)*, 283 B.R. 87, 95 (Bankr. M.D. Fla. 2002) (citing *Miller v. Fla. Mining & Materials (In re A.W. & Assocs., Inc.)*, 136 F.3d 1439, 1442 (11th Cir. 1998)).  Here the Defendant has not presented any hint that she can produce evidence as to such a standard.  Thus, the Court must assess whether the transfer was "made in the ordinary course of business or financial affairs" of the Debtor and the Defendant.

"Where parties have no extensive history of credit transactions to which a disputed payment can be related, their express agreement furnishes 'the most informative evidence left to consider' of the ordinariness of a transaction from the parties' perspective." *In re Globe Mfg. Corp.*, 567 F.3d at 1298 (quoting *Logan v. Basic Distrib. Corp. (In re Fred Hawes Org.)*, 957 F.2d 239, 245 (6th Cir. 1992)).  For example, in *Household Bank*, the defendant proved its case by showing that the payments made by the consumer were made on the timetable and in the

manner prescribed by the underlying note's specific requirements. *Household Bank F.S.B.*, 334 F.3d at 643.

Here, the record reflects that the manner of the transfer was ordinary.  The Agreement states that the "[Debtor's] name will be removed from the deed."  The execution, delivery, and recordation of a quitclaim deed by the Debtor accomplished that result, and such an instrument is regularly employed to clear the real property records of a party's interest.

On the other hand, the Agreement does not prescribe a period within which the Debtor's name was to be "removed from the deed," so the timing of the transfer cannot be validated as ordinary from the face of the Agreement.  But this does not bar the Debtor's ordinary course defense per se.[47]  In the absence of a written term specifying the time for performance, the parties might have agreed on an time term that was not memorialized in the Agreement but still enforceable under Georgia contract law.  Indeed, the Defendant's Affidavit states that the execution and delivery of the Second Deed on January 23, 2014, as well as its recordation on January 24, 2014, "was consistent with our intent at the time we entered into the contract and executed the deeds."

Further, in the absence of an express time term, "a reasonable time for performance [is] implied" by Georgia law. *Read v. GHDC, Inc.*, 254 Ga. 706, 706, 334 S.E.2d 165, 166 (1985). Accordingly, the Debtor was required to ensure that "[his] name [was] removed from the deed" within a reasonable time, and any failure to do so would be a breach of his Agreement with the Defendant.  If the transfer occurred within the reasonable performance period implied into the Agreement, that would be probative that the timing of the transfer was ordinary, and vice-versa. The Agreement specified that the Debtor had until January 1, 2014 to perform the repairs.  The record shows that the land records were cleared of any interest of the Debtor in the Property by

---

[47]   *Cf., e.g., Willson v. McPhersons P'ship (In re Cent. La. Grain Coop., Inc.*, 497 B.R. 229, 237 (Bankr. W.D. La. 2013) ("The fact that a challenged transaction is the only transaction between the parties is not fatal to an ordinary course defense.  However, where there is no history of prior dealings between the parties, the defendant must establish that the challenged transfer was consistent with an agreement (written or oral) between the parties.").

January 24, 2014.  The Court cannot deem such a period (twenty-three days) as per se unreasonably long for similarly situated parties to deal with this type of matter.

On the other hand, the Trustee, at the hearing, demonstrated that the Second Deed was executed the same day that the Defendant's bank accounts were garnished, which raises some question as to whether the timing of the transfer was ordinary.  The Trustee infers, but has not shown, that the Second Deed was executed after the garnishment was served, and infers further, but has not shown, that the Debtor and/or the Defendant knew of this garnishment at the time the Second Deed was delivered and recorded.

As noted above, the Trustee argues in his brief that the Defendant's requests or demands for the execution and delivery of the Second Deed render it unordinary.  Yet, the record does not establish the timing or nature of these requests or demands.

Last (also as noted above), the Trustee argues that the transfer was not ordinary because it occurred after the Debtor's job offer was withdrawn.  This argument is not persuasive.  While the Debtor's securing the offered job might have slowed or stopped the Debtor's slide into bankruptcy, his failure to secure the job did not necessarily precipitate it.  The Trustee did not specifically explain how the receipt and later loss of the job offer impacted the Debtor's financial situation.  More importantly, the Agreement itself contemplates the Debtor's nonperformance of the repairs, whatever the reason.  That it may have been the Debtor's unemployment which rendered him unable to perform the necessary repairs under the Agreement has little bearing on whether a transfer made pursuant to that Agreement was ordinary.

Construing these facts in favor the Defendant, the Court must deny the Trustee's Motion.  Construing these facts in favor the Trustee, the Court must deny the Defendant's Motion.  The Court reserves weighing this evidence for trial.  For these reasons, the parties' motions regarding § 547(c)(2) are denied.

**D.**    *New Value Defense under § 547(c)(4)*

The Defendant next argues that the transfer, if any, is protected from a § 547 preference

action because the transaction falls within the new value exception provided by § 547(c)(4).[48]

The Defendant would have the burden at trial to prove that the elements of this exception are

met. 11 U.S.C. § 547(g).

The Defendant acknowledges that she must prove the following three elements to prevail

on this defense: "(1) that the creditor must have extended the new value after receiving the

challenged payments, (2) that the new value must have been unsecured, and (3) that the new

value must remain unpaid." *Charisma Inv. Co. v. Airport Sys., Inc. (In re Jet Fla. Sys., Inc.)*, 841

F.2d 1082, 1083 (11th Cir. 1988).

The Trustee argues that the Defendant cannot prove that she provided "new value" as it is

defined in the Bankruptcy Code:

> "[N]ew value" means money or money's worth in goods, services,
> or new credit, or release by a transferee of property previously
> transferred to such transferee in a transaction that is neither void nor
> voidable by the debtor or the trustee under any applicable law,
> including proceeds of such property, but does not include an
> obligation substituted for an existing obligation.

11 U.S.C. § 547(a)(2).

In response, the Defendant argues that she added new value to the estate by "reducing

Debtor's potential liability under the Agreement, which would have required substantial out-of-

pocket expense in order to fulfill his repair work obligations."  This argument fails.  Virtually

every payment to a creditor reduces a debtor's potential liability, yet many such payments are

---

[48]    Section 547(c)(4) provides:

> The trustee may not avoid under this section a transfer . . . to or for the benefit of
> a creditor, to the extent that, after such transfer, such creditor gave new value to
> or for the benefit of the debtor—
>
> (A) not secured by an otherwise unavoidable security interest; and
>
> (B) on account of which new value the debtor did not make an otherwise
> unavoidable transfer to or for the benefit of such creditor.

11 U.S.C. § 547(c)(4).

avoidable preferences. The definition of new value clearly does not contemplate the release of an unsecured executory obligation, such as argued by the Defendant. "The Eleventh Circuit has determined that forbearance, or the act of refraining from enforcing a right, obligation, or debt by a creditor, cannot be treated as 'new value' under section 547." *Gen. Time Corp. v. Schneider Atl., L.P. (In re Gen. Time Corp.)*, 328 B.R. 243, 247 (Bankr. N.D. Ga. 2005) (citing *Am. Bank of Martin Cnty. v. Leasing Serv. Corp (In re Air Conditioning, Inc.)*, 845 F.2d 293, 298 (11th Cir. 1988).

The Defendant has thus failed to show how she extended any new value to the Debtor.[49] Moreover, even if had she extended new value, the value would have been extended at the time of the subject transfer, and not "after such transfer" as required by § 547(c)(4). The Court thus grants the Trustee's Motion against the Defendant's new value defense under § 547(c)(4).

An order consistent with this Opinion with be entered on even date herewith.

[END OF DOCUMENT]

---

[49]    The Court does not opine that new value could not be established on these facts. *Cf. In re Sudco, Inc.*, 2007 WL 7143065, at *11-12.